Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. My name is Gage Eller, and I, along with my co-counsel, Ms. Kelly Shea Delvack, are the pro bono counsel for the appellant, Mr. Sernas. I would like to reserve four minutes of my time for rebuttal, which my co-counsel, Ms. Delvack, is going to argue, and I'm going to argue the opening. This appeal arises from the dismissal of a pro se civil rights action. The case originated in a prison's protective custody unit where Mr. Sernas' life was threatened by other inmates, so he pleaded with the prison officials to protect him, but they didn't, and it is undisputed that Mr. Sernas was so severely beaten that his skull was fractured in two places, his orbital bone was shattered, his jaw and nose were broken, he lost vision in his right eye, and he now suffers from permanent mental impairment and but it doesn't end there. The prison officials then attempted to force Mr. Sernas to waive his claims and cover up the attack. Mr. Sernas' operative complaint stated all of the facts necessary for an Eighth Amendment deliberate indifference claim, yet the district court threw out Mr. Sernas' complaint, finding that it did not allege a single claim. The question on appeal pertains to the extremely low notice pleading standard for a pro se plaintiff. The district court improperly screened this case because the alleged facts clearly stated numerous cognizable constitutional violations. It seems like the district court's concern was that the allegations were not specific enough to be to put the prison officials on notice under the deliberate indifference standard, so why do you think the allegations here were specific enough? Your Honor, this case is nearly identical to Berg v. Kincheloe, in which the Ninth Circuit found a viable Eighth Amendment deliberate indifference claim. The allegations, the factual allegations, were specific enough because only two elements are required to state a deliberate indifference claim. First is that the defendants have actual knowledge of the serious risk to safety. In this case, Mr. Sernas alleges that he told all of the defendants repeatedly of the continuous threats made on his life. In Berg v. Kincheloe, Berg's telling the prison official of a threat made on his life satisfied the actual knowledge prong of a deliberate indifference claim. And similarly here, Mr. Sernas' allegation that he told the prison official repeatedly about the threat satisfies that prong. The second is that the defendants deliberately disregarded that risk. And in this case, Mr. Sernas alleged that no incident report was conducted which was necessary to start an investigation into the threats made on his life. What do you make of the fact, though, that your client didn't disclose the identities, at least in the complaint, by the allegations of the complaint, didn't disclose the identities or some other identifying information for the prison officials? I mean, that would make it difficult for them to then determine who was posing a risk of harm to him. Perhaps, Your Honor. However, the Supreme Court has already answered that question in Farmer v. Brennan, where it stated that specific source of the threat of harm does not need to be identified to state a valid deliberate indifference claim. And in Berg v. Kincheloe, Berg refused to identify his assailant to the police and still alleged deliberate indifference claim. It is unclear whether he identified his assailants to the prison officials, but this fact did not matter to the court in determining that there was a deliberate indifference claim. Counsel, your client has sued, I believe, it's eight different prison officials. Are you standing by the idea that all eight of these, that we should reverse as to all eight of these? Yes, Your Honor. Mr. Sernas does allege facts that he told all of them. Well, let's start with a couple of them. Tell me what the claim is against Mr. Jimenez. Your Honor, Sergeant Jimenez, that goes to the second part of Mr. Sernas' complaint, which alleges all of the facts giving rise to constitutional violations occurring after Mr. Sernas returned from the hospital. Those facts have nothing to do with his deliberate indifference claim, but they all go to support the additional constitutional violations. Excuse me, Your Honor? Yeah. What, what, what, what claim does he have against Jimenez? A First Amendment compelled speech claim and a First Amendment retaliation claim and a substantive due process 14th Amendment cover-up claim, Your Honor. Are these claims he bled out? The claims are Eighth Amendment claims, not First Amendment. The Eighth Amendment claim, Your Honor, was the claim that Mr. Sernas explicitly wrote on his complaint. However, the standard for here is notice pleading. So Mr. Sernas only needed to plead enough facts, giving notice to the defendants that these constitutional violations or these claims existed. And here in this case, Mr. Sernas, as I previously stated, the only explanation for why Mr. Sernas included these facts was to try to allege claims for these constitutional violations of his First Amendment rights. One of those claims, Your Honor, is the compelled speech claim. The First Amendment prohibits the government from forcing people to assent to messages that they disagree with. Even though Mr. Sernas is located in a prison, not all of his First Amendment rights disappear in the prison context. He's not located in a gulag. He's an American prisoner. This isn't a situation where Mr. Sernas is waiving some of his First Amendment rights at a sports game. Mr. Sernas was asked to sign a form that would waive his ability to bring a case regarding the very issue that he is complaining about. And Your Honor, I see my time has almost expired, and so we ask this court reverse the district court's dismissal, and I would like to reserve the rest of my time for rebuttal. Thank you. We're going to give you a minute, Mr. Eller, after Mr. Gottfried finishes his argument for rebuttal. Ms. Belvac, we'll now hear from you. Thank you, Your Honor. I'm going to... This is Mike Gottfried. I'm the respondent. Ms. Belvac, were you going to take four minutes now, or were you preparing to leave that for later? I'm prepared to take the four minutes at the rebuttal time. Okay. I did not appreciate that. Thank you. Mr. Gottfried, we'll then hear from you. Judge Bybee, I apologize if I cut you off. I didn't I'm good. Thank you. Okay. Thank you, and good morning, and may it please the court. My name is Michael Gottfried. I'm an assistant attorney general for the state of Arizona, and by invitation of the court, we filed an amicus brief in support of the district court's dismissal of this complaint under the PLRA 28 U.S.C. 1915A. I think the important part of this factual scenario and what the plaintiff alleged is that the minute, or when he told Officer Martinez that he was in danger, he was immediately placed into a safe location. He was on a general population yard. It's called the Barchi Yard. They moved him into a refused-to-housing pod right when he made this allegation that he was in danger, and for four months, he was in the refused-to-housing pod without any incidents, and that's the key problem with the arguments here and what the district court was trying to get the plaintiff to allege. While he was in this returned-to-housing pod for four months, he kept telling people, I'm in danger on the Barchi Yard, allegedly. I'm in danger on the general population yard, but he wasn't in danger where he was. There was no reason for these officers to think that he was in danger where he was because he wasn't even telling them, alleging that he was in danger where he was for that four months. The problem and the danger he was telling these officers was the movement back onto the and the district court kept asking. He had three times to amend his complaint. The district court kept saying, you have to allege what these particular officers in this particular situation were doing to endanger your safety, and he never did. There was a remarkable change in the pleadings from the first complaint to the third complaint. It was more detailed, but the crucial information still wasn't there. I want to break down some of these, and this will be a follow-up to the question I asked Mr. Eller. I don't see that Jimenez, Gonzalez, Palmer, and Willis were involved in the decision to return him. Perhaps we have to confront the First Amendment claim that Mr. Eller told us were all told by Mr. Cerna of the possibility he was going to be harmed if he was returned, and they were all involved in the decision to return him. Why isn't that sufficient under a generous view, a capacious view of the Eighth Amendment to survive a motion to dismiss? Your Honor, if I think they really do, I saw no allegations that they were involved in the decision to return him. First of all, I apologize to the court for attaching the wrong regulations represent to the court that the regulations that were in place at the time this was all going on are the same, substantively. The numbers are different, and I'll file something correcting that error. But the point of the matter is the regulations have a well-defined framework and process for making these decisions, and none of these people were involved in that, would have been involved in that decision. The key point, I think, is the complaint doesn't allege any of these people were involved in the decision. Okay, so even if they weren't the deciding officer who said, okay, it's time to send Cerna back to the general population, if they were told of threats and repeatedly told of threats, did they have an obligation to pass that on to somebody who was in a position to make that decision? Potentially, Your Honor, but their obligation is to keep the person safe. You know, I don't know if this is... If you send me back to the general population, I am not going to be safe, and here's why. Those officers, even if they're not a deciding officer, it seems to me it's not unreasonable to think that they would have an obligation to say, we can't send this guy back, or at least we need to inquire further before we send this guy back. Well, Your Honor, it's hard because we're on a motion to dismiss, and we have to take the pleadings for what they say, and I understand that. But that sort of cuts against the state, doesn't it, that we are at the motion to dismiss stage? To a certain extent, but Your Honor, there's the allegation that no investigation was done. The allegation that there was no inquiries made is not something that has to be taken as true on a motion to dismiss. That's a conclusion without any foundations. There's no way this inmate could have known what was going on about investigations and things like that. And the fact of the matter is, the process does require that these people inquire to the inmate what was going on and some investigation happened. Not necessarily these people have to do an investigation, but there's nothing in this complaint, factual, that leads to a conclusion or an inference, even, that no investigation was done, and the fact that no investigation was done was these defendants' faults. And frankly, the complaint doesn't really allege that. How would CERN have information to do that? I mean, if somebody came back and asked him some questions, he would know that. But if they were talking to somebody else, how would CERN ever possibly be able to do that? It might be a terrific defense, but we're at a motion to dismiss stage, and if the prisoners told us, if CERN has told us what he knows, then I don't know how he can be faulted for not telling us things that he doesn't know. Your Honor, well, because, Your Honor, the regulations are part of this case, and I can talk briefly about why they're part of this case, but the fact is, there's a framework for this process to happen, and the framework gives the defendant, gives the inmate, at the end of the process, notice of what's happening, he's going back. He should have known who was making these decisions and should have known about the process. Because he didn't mention it in the complaint makes it difficult to talk about a little bit, and maybe it's clever pleading by a person who may know how the system works. But there's no allegation, just a bare allegation that these people didn't do an investigation shouldn't be enough to stain them as a 1983 defendant. Merely, it's not a magic incantation or a magic kind of words that if you say, oh, I told them of a danger, now they're liable for 1983 liability. The fact is, he was safe. He was safe in that situation for four months, and that was the responsibility of these corrections officers, to make sure he was safe. If there was an investigation that wasn't done before he was released, just alleging these people because they came and talked to me didn't do an investigation isn't good enough. I mean, there's got to be some facts behind a claim that somebody put me in danger, and that's what the district court asked for. And frankly, if this inmate didn't remember or didn't have the ability to find out what needed to go in the complaint, he could have asked the district court, and he had three opportunities. He could have filed a motion saying- I think Judge Bivey is trying to get in a question. Zoom makes- Oh, I'm sorry. What do you do with our case in Berg versus Kinchlow? It's totally different, Your Honor. In Berg, the officer, whose name was Marsh, was told if I go and the inmate said, if I go to my job assignment, I'm going to be injured. The officer did nothing. He went to his job assignment and injured. Compare that with what happened here. The inmate, the plaintiff, went to Officer Gonzales and said, hey, I'm in danger. I'm going to be beaten up. Officer Gonzales put him out of the danger, put him into the refuse to house pod, kept him away from the danger for four months while people were coming and asking him questions about the incident. It's the total opposite. But you do have four officers here, Collars, Galvin, Baker, and Cantrell, who were told by Cernus that if he was returned to the general population, that his life was in danger. Now, that sounds very much like Berg. I don't think so, Your Honor. The difference is that the officer in Berg could have stopped the immediate danger from happening. These officers weren't responsible, and there was no allegation that they were responsible for putting them somewhere else. It's just a guess. The inmate's just saying, oh, these people didn't do anything when I told them. He doesn't know that. There's no facts to support that. And these individuals can't be marked with potential Section 1983 liability because of a bare allegation like that, and absent an allegation that they had anything to do with moving him from that yard to the yard where he was assaulted. And I just want to say a few words about this idea that, and I'm way over my time, I think. Oh, I have a few more seconds. A few words about this idea that the district court is required to search through the record and find other claims that may arise from the facts. No court's ever said that. The Supreme Court and this court has made it clear over and over again that courts are not there to look for claims to act as attorneys for people, and the district court may have the ability and have the discretion to find another claim, but I've seen no case, and there's no reason to think the district court has the responsibility to search through a plaintiff's allegations to look for claims, and it wouldn't be an abuse of discretion if they did not search through and look for alternative claims. The district court gave the inmate... Your time has expired, so why don't you quickly go ahead and district court gave this inmate three opportunities to put some detail into this complaint about what these people actually did to endanger him. No allegations that they had any kind of part in putting him into the yard. That's the key aspect here. The district court properly dismissed this complaint after screening. Thank you. So I understand rebuttal will be handled by Ms. Delvatt. My apologies for the confusion. Ms. Delvatt, please proceed. Thank you, Your Honor. Good morning. I'm Kelly Shea Delvatt for the appellant, and I want to jump right in by addressing these seven defendants in this case. As you pointed out, defendant Colliers, Palmers, Galvin, Baker, and Warden Control, they all had the authority to move Mr. Cernas. He claims that in his complaint. He speaks of each of them and says, I told them of the the defendant Galvin said, you will have to move back to the yard and deal with your problems. Palmer also said eventually you will have to move back into the yard. But I would like to clarify, this was not a general population yard. Barch unit was a protective custody unit, and that is in the complaint, that it is a protective custody unit. So he was already a protective custody unit at 51. Mr. Cernas does, he does allege at that point that the threats were continuing and that he told the prison officials every time he talked to them, I am, even though I am in this protective refuse to house pod, I am continued, continually being threatened, even at this time. And it is not the moving to the refuse to house pod, which was a temporary location that showed the deliberate indifference. It was that nothing was done to alleviate the threat when he was forced back onto his Barch unit yard. The threat had not dissipated. There was, there was no indication that there had been an investigation. Mr. Cernas also says there, there were cameras all over the prison yard. So they could have done an investigation, seen on the cameras who the, who the offending other inmates were, who the threat was coming from. As far as Mr. Cernas knows, they did none of that. All they did was keep questioning him as to who they were. And when he didn't tell them, they threatened him with discipline and said, well, you're going to have to go back there. And then four months after, when they finally, he, they finally moved him back and said, enough's enough. You're going to be disciplined or move back. He moved back 15 minutes, 15 minutes it took for those inmates to assault him almost to death. What did you do with Jimenez-Gonzalez, Palmer and Willis? So security officer Palmer was actually in charge of safeguarding the inmates for their legitimate protective needs. And his response was that he would look into it. And that was also, so that, that would be Willis and Palmer. They both said they would look into it. They didn't. So their assertion to Cernas was, we can do something, let us look into it. And then they did nothing. Gonzalez, the deliberate indifference claim against him would be that there was no incident report ever written. And when Mr. Cernas asked about investigations, and this was further along in the road, they said, you have no, you have no right to ask for that. And you have no right to get that. And therefore. The incident report being when he was beaten up. That was to the incident. So Sergeant Gonzalez would have written the original threat to his safety report, which we have no, which as far as Mr. Cernas knows, was never written. On the original complaint that maybe would have. And that's an Eighth Amendment violation? That would be the Eighth Amendment because that was pre-attack. So that was the first threat that led to the deliberate indifference claim. But jumping to. What is Mr. Cernas allege about why he was initially placed in the refused to house pod? Does the complaint contain allegations as to why that was? It does, your honor. Two inmates asked him to hold their drugs. And when he refused to do so, they said, we are going to kill you. And that was the original threat that led to him telling the officers, my life is in danger and I need to be moved. But what does he allege as to why he was actually, is that, I mean, that. Is that why officials placed him in there or has he alleged anything drawing the connection between those two things? Between the initial threats to him and why he was then placed for some period of months in the refused to house pod? Well, your honor, he asked to be placed in a protective place, which happened to be the refused to house pod. But for the four months he was there, he continually was being threatened that the other inmates could still speak to him. He did convey that to the officers that he was still being threatened. And in response, they asked him to name names and threatened him with discipline and said, you will have to move back. He asked to be moved. And they said, that's not an option. Okay. Just know that we let you go over your time. And so I'm going to, I'm going to ask you to go ahead and just wrap up in 15 or 20 seconds. Thank you, your honor. Your honor, just briefly to Sergeant Gonzalez, her, all of her conduct was after the fact in the complaint, it shows that Mr. Cernus was trying to complain of conduct that happened after the attack. And that's why it gives rise to a first amendment claim. And that would be all that Sergeant, I apologize, Sergeant Jimenez, that would be all that Sergeant Jimenez would be complained of in the complaint. But we do believe that notice pleading shows that that is what he complained of. So we do ask that you reverse on both the eighth and the first amendment complaints. Thank you so much for your time. And the court does want to acknowledge that Mr. Eller and Ms. Delvack were appearing pro bono on behalf of Mr. Cernus. The court wants to express its appreciation for your pro bono representation. You've ably discharged the responsibilities for which the court is grateful. We'd also like to thank Mr. Cutting, your course, we want to thank you for your representation as well and for your arguments this morning. The court thanks all counsel for their briefing argument and the cases submitted.
judges: Bybee, Cardone, Bress